(No. 40630.—

JOHN DOOLIN, d/b/a National Novelty Company, *et al.*, Appellants, *vs.* MARSHALL KORSHAK, Director of Revenue, *et al.*, Appellees.

*Opinion filed March 28, 1968.—Rehearing denied May 28, 1968.*

Peterson, Lowry, Rall, Barber & Ross, of Chicago, (Elroy C. Sandquist, Jr., of counsel,) for appellants.

William G. Clark, Attorney General, of Springfield, (John J. O'Toole, Assistant Attorney General, of counsel,) for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

In *International Business Machines Corporation* v. *Korshak*, 34 Ill.2d 595, the Leasing Occupation Tax Act, the Leasing Use Tax Act and related taxing statutes were sustained against attack upon numerous constitutional grounds. In the present class action to enjoin the enforcement of those statutes, the appellants, John Doolin and eleven other named plaintiffs, urge again many

of the contentions that were disposed of in that case. In addition they attack the validity of the statutes upon other constitutional grounds. The circuit court of Cook County sustained the motion of the Director of the Department of Revenue and other defendants to dismiss the complaint, but ordered that amounts paid under protest be retained in a protest fund pending disposition of the case. The revenue is involved and the plaintiffs have appealed directly to this court.

The Leasing Occupation Tax Act and the Leasing Use Tax Act were repealed by a statute which became effective August 1, 1967, (Ill. Rev. Stat. 1967, chap. 120, pars. 453.101 and 453.121) after the plaintiffs' original brief was filed. In a prefatory statement, the defendants' brief quoted the saving clause of the repealing statute "for the purpose of informing the Court of the present status of the Leasing Occupation Tax Act and the Leasing Use Tax Act, and to establish that this cause is not affected by the repealing statute". In their reply brief the plaintiffs contend that the effect of the repeal is to require that all amounts paid under protest pursuant to the repealed statutes must be refunded to the taxpayers. It is necessary to dispose of the issue thus raised before considering the other contentions advanced by the plaintiffs.

The repealing Act provides: "However, any taxes imposed under the Acts repealed by this Act with respect to transactions consummated before this Act takes effect shall continue to be assessed and collected in the same manner and to the same extent as if said Acts were not repealed. Also, claims for credit or refund of taxes paid pursuant to those Acts with respect to transactions occurring before the effective date of this Act, may continue to be filed and shall continue to be disposed of in the same manner and to the same extent as if said Acts were not repealed."

We agree with the defendants that the repealing Act has no effect upon the status of this case. The plaintiffs' argu-

ment to the contrary is hard to follow. They seem to say that because the Department of Revenue did not, prior to the effective date of the repealing Act, initiate tax assessment proceedings, they are entitled to the money held in the protest fund. The repealed statutes granted taxpayers a right to an administrative hearing and judicial review to determine the amount of tax due. (Ill. Rev. Stat. 1965, chap. 120, pars. 453.106, 453.131.) But we are unable to see why the Department was under any obligation to institute assessment proceedings with respect to the plaintiffs. Their complaint attacks the validity of the taxing statutes upon various constitutional grounds. Apart from the legal issues thus raised, the complaint does not suggest that any dispute exists as to the amount of taxes due. The Department therefore had no occasion to institute proceedings for the assessment of the tax. It follows that without regard to our decision in *Fiorito* v. *Jones,* Docket No. 41099, this contention of plaintiffs is without merit.

Plaintiffs' first constitutional objection is that the Leasing Occupation and Leasing Use Tax Acts violate section 13 of article IV of the Constitution of Illinois, which provides that "[n]o act * * * shall embrace more than one subject, and that shall be expressed in the title." (Ill. Const., art. IV, sec. 13.) Plaintiffs note that each Act contains a number of "specific exemptions or exclusions"; and argue that "[t]he fraud and deception sought to be avoided by Section 13, Article 4, of the Constitution of Illinois, arising when the title of a bill fails to give sufficient notice that such bill *includes* classes which the title of the bill does not embrace, is equally apparent, and just as obnoxious when the bill *excludes* numerous classes which the title of the bill embraces." In the *I.B.M.* case (34 Ill.2d at 599, 600) we rejected an attack based on this same constitutional provision. In doing so, we reiterated our statement in *Turner* v. *Wright,* 11 Ill.2d 161, 172, that section 13 of article IV is complied with when "it is clear that all of the provisions

of the act deal with a single subject,—the imposition of a use tax,—which is clearly expressed in its title." We regard these cases as dispositive of plaintiffs' argument and reject the suggestion that the titles of taxing Acts must enumerate all exclusions and exemptions.

The *I.B.M.* case also disposed of plaintiffs' contention that section 13 of article IV of the Illinois constitution is violated "because of the vast number of provisions from other statutes incorporated by \* \* \* reference." In that case we held that the provision that " 'no law shall be revised or amended by reference to its title only, but the law revised, or the section amended, shall be inserted at length \* \* \*' does not prohibit incorporation by reference." 34 Ill.2d at 610.

Plaintiffs argue that the statutes under consideration are unreasonably discriminatory in violation of various provisions of the State and Federal constitutions because only the Leasing Occupation Tax Act, and not the Leasing Use Tax Act, excepts from the definition of taxable gross receipts "amounts received by the lessor which are in excess of the fair market value, which shall not be less than cost to the lessor, of the tangible personal property on the date the lease was entered into \* \* \*." (Ill. Rev. Stat. 1965, chap. 120, par. 453.102.) This argument is a restatement of another contention rejected in the *I.B.M.* case. (34 Ill.2d 595-605.) We remain unpersuaded. " '[W]hen the rental receipts exceed the fair market value of the leased property on the date when the lease was entered into, the lessor must continue to collect the leasing tax from the lessee, but he will remit such tax to the Department as leasing use tax instead of as leasing occupation tax since he will then have no offsetting leasing occupation tax liability \* \* \*.' A lessee under a long term lease continues to pay leasing use tax after his rental payments have equaled the fair market value of the leased item. And the lessor continues to remit the tax he collects from the lessee after he has received

rental payments equal to the fair market value of the leased item. In this there is no discrimination among lessors or among lessees." 34 Ill.2d at 603-04.

Nor can we accept the plaintiffs' contention that a leasing use tax cannot continue to be collected in the absence of a complementary leasing occupation tax. Their reliance upon *Turner v. Wright,* 11 Ill.2d 161, is misplaced. There we recognized that even under "the broad dictum of *Bachrach v. Nelson,* 349 Ill. 579, that the constitution restricts the taxing power of the General Assembly to (1) property taxes on an *ad valorem* basis, (2) occupation taxes and (3) franchise or privilege taxes * * *," a use tax is valid as a "privilege tax." (11 Ill.2d at 164.) And in *Turner* we also pointed out that in *Johnson v. Halpin,* 413 Ill. 257, the complementary role of the cigarette use tax afforded an *additional* ground upon which that tax could be sustained. 11 Ill.2d at 165.

Both the Leasing Occupation Tax Act and the Leasing Use Tax Act exempt "the renting or leasing of·real property * * * even though the rental or leasing charge includes the right to use some personal property (such as furniture and furnishings) in connection with the use of such real property." (Ill. Rev. Stat. 1965, chap. 120, pars. 453.102, 453.122.) The plaintiffs argue that although an owner of a furnished apartment house or hotel, who purchased furnishings for installation in the apartments or hotel rooms that he rents, pays neither an Illinois Use Tax nor a tax under the Leasing Occupation Tax Act, one of the plaintiffs is a lessee of an unfurnished apartment who was compelled under the Use Tax Act to pay a tax on the furniture he purchased for use in his apartment. Therefore, the plaintiffs argue, the exemption is special legislation which violates section 22 of article IV of the Constitution of Illinois and the due process and equal protection clauses of the 14th amendment to the Constitution of the United States.

Faced with a similar objection in the *I.B.M.* case, we held that the exemption in question "is a reasonable recognition of the differences between the two kinds of leases, and of the difficulties of allocating value in real estate leases between personal property on the one hand and fixtures and other real property on the other." (34 Ill.2d at 605.) Implicit in this holding is a rejection of the present contention that the exemption is an irrational and invalid discrimination between taxpayers whose circumstances are identical.

Plaintiffs attack as "discriminatory and unconstitutional" the statutory provisions exempting from taxation the "leasing in this State of tangible personal property to a lessee where such property is moved by an interstate carrier for hire as rolling stock moving in interstate commerce." (Ill. Rev. Stat. 1965, chap. 120, pars. 453.103, .123.) They argue that there is no substantial difference between having goods delivered by vehicles leased by the seller of those goods and having them delivered by vehicles leased by a public carrier.

In the *I.B.M.* case we declined to rule upon this question because the plaintiffs in that case did not "bring themselves within the class of persons allegedly discriminated against." (34 Ill.2d at 606.) The complaint in the present case asserts that several of the plaintiffs, lessees of motor vehicles leased in Illinois, "use said leased vehicles not as carriers for hire but move such rolling stock in interstate commerce to transport their own property through and to other States."

The governing principles are clear. "It is well established that the legislature has broad powers to establish reasonable classifications in defining subjects of taxation." (*Klein* v. *Hulman,* 34 Ill.2d 343, 346.) The "prohibition of the Equal Protection Clause goes no further than the invidious discrimination." (*Williamson* v. *Lee Optical, Inc.,* 348 U.S. 483, 489, 99 L. Ed. 563, 573.) "A statutory dis-

crimination will not be set aside if any state of facts reasonably may be conceived to justify it." (*McGowan* v. *Maryland* (1961), 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 399.) And "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Madden* v. *Kentucky,* 309 U.S. 83, 88, 84 L. Ed. 590, 593.

The validity of taxation of private and common carriers at different rates has been recognized both by this court (*Bode* v. *Barrett,* 412 Ill. 204, 244 aff'd 344 U.S. 583, 97 L. Ed. 567,) and by the Supreme Court of the United States (*Dixie Ohio Express Co.* v. *State Revenue Comm'n,* 306 U.S. 73, 78, 83 L. Ed. 495, 500), which has consistently upheld taxes which place a greater burden upon common carriers than upon private carriers Annot., 75 A.L.R. 13, 24-26.

The provisions attacked in this case, however, exempt only carriers for hire. The same exemption in the Use Tax Act (Ill. Rev. Stat. 1967, chap. 120, par. 439.3) is prefaced by a declaration that its purpose is "[t]o prevent actual or likely multistate taxation." Clearly, it was incorporated into the statutes before us to serve the same purpose. And in view of the decisions upholding tax laws that have incorporated heavier tax burdens upon carriers for hire, we cannot say that the legislature's assumption that those carriers are more likely than private carriers to be subjected to multistate taxation, was unwarranted, or that the plaintiffs have met their burden of establishing that the exemption is not reasonably calculated to prevent multistate taxation. Moreover, since "in taxation even more than in other fields, legislatures possess the greatest freedom in classification," (*Madden* v. *Kentucky,* 309 U.S. 83, 88, 84 L. Ed. 590, 593), we are not willing to question the decision to refuse such protection for private carriers, who, free of the rigid rate regulations imposed on common car-

riers, can more easily pass taxes such as those imposed to their customers.

· Plaintiffs allege another unconstitutional discrimination in the credit provision of the Leasing Occupation Tax Act. Section 5 provides that."[c]redit against leasing occupation· tax liability shall be given for the amount (if any) of Illinois .use tax or service use tax previously paid or incurred by the person incurring such leasing occupation tax liability' on his prior. use of such property, including his prior·use of such property in the capacity of a lessor, on the. condition that such lessor does not' charge and collect leasing use tax on the tangible personal property being leased which is the subject of such credit." Plaintiffs contend that this credit results in a leasing occupation tax being passed on to only those lessees whose lessors did not pay a use tax prior to August 1· of 1965. They contend that the lessees of lessors who did not pay such a prior use tax are discriminated against because they must bear the full burden of a subsequent. leasing occupation tax. This argument overlooks the fact that the lessees whose lessors did pay.a prior use tax sufficient in amount to exempt them from a leasing occupation tax.under the above credit provision are still subject to a leasing use tax. Thus, as defendants stated in their brief, "[i]n each instance the lessee would ·be bearing an equal tax burden."

The County Leasing Occupation Tax Act (Ill. Rev. Stat. 1965, chap. 34, pars. 409.4, repealed by an act approved July .20, 1967, S.B. No. 1781) empowered counties to tax lessors one-half of one percent of their gross receipts. Because of the "fair market value" limitation on the definition of gross receipts; liability under this Act terminated at the same time it terminated under the Leasing Occupation Tax Act. As has been pointed out, thereafter the same tax that was collected under the Leasing Occupation Tax Act was collectible under the Leasing Use Tax Act, but

there was no corresponding county leasing use tax. Plaintiffs note that it is common practice for lessors to pass the burdens of these taxes to their lessees, but that lessees have no way of knowing when their lessors are no longer obligated to remit the additional one half of one percent under the County Leasing Occupation Tax Act. They argue that as a consequence, the taxing scheme embodied in these Acts contains the potential for unjustly enriching lessors. We agree with the defendants: the "bare allegation of unconstitutionality predicated on this argument is totally without merit." The potential for unjust enrichment is negligible, if it exists at all, for as defendants point out, lessees can ascertain the information necessary to determine when county taxes are no longer collectible in the same way the State does—by asking their lessors.

In view of our denial of each of the plaintiffs' constitutional challenges to the Acts under consideration, we need not consider plaintiffs' final two arguments, which are (1) that "the severability clauses of the acts assailed are ineffective, null and void, and violate section 16, of article IV of the constitution of the State of Illinois" and (2) that "the totality and cumulative effect of the objections to which the acts assailed are exquisitely amenable, reveals the repugnancy of those acts to constitutional essentials of valid enactments * * *." And since we affirm the dismissal of plaintiffs' complaint on the merits, it is unnecessary to consider defendants' contention that plaintiffs' "suit * * * can not be brought as a class action."

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*